**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| KATHLEEN FREDERICKS, **individually and on behalf of all others, similarly situated,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | Civil Action No. 3:23-cv-01042-PAD |
| AMERIFLIGHT, LLC, | § § § | |
| **Defendant.** | § | |

**AMERIFLIGHT'S MOTION TO TRANSFER VENUE**

Subject to and without waiving its Motion to Dismiss and Brief in Support ("Motion to Dismiss") (doc. 22), Defendant Ameriflight, LLC ("Ameriflight") files its Motion to Transfer Venue ("Motion") and states:

**OVERVIEW**

1. Plaintiff Kathleen Fredericks ("Plaintiff") worked for Ameriflight for approximately eight months, before submitting her voluntary resignation in December 2021. In this putative collective action, Fredericks has brought claims for damages against Ameriflight for violations of the Fair Labor Standards Act ("FLSA") and the Texas Business & Commerce Code, and additionally seeks declaratory judgment pursuant to the Texas Uniform Declaratory Judgments Act. Ameriflight denies all liability. For the reasons set forth in the Motion to Dismiss, Plaintiff's claims are meritless on their face and should be dismissed pursuant to Rule 12(b)(6), and her declaratory judgment action seeks an impermissible advisory opinion, something the Court lacks subject-matter jurisdiction to provide. Fed. R. Civ. P. 12(b)(1). If it does not grant the Motion to Dismiss or wishes not to rule on it, the Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Northern District of Texas.

**EVIDENCE IN SUPPORT OF THE MOTION**

2.      In support of the Motion, Ameriflight relies on the factual allegations in Plaintiff's

Original Complaint (doc. 1), as well as the Declaration of Scott Macduff, attached hereto as Exhibit

A and incorporated herein by reference for all purposes. Citations to the Declaration are indicated

by "Dec." followed by the appropriate paragraph and/or exhibit number.

**FACTS**

3.      Ameriflight is the nation's largest operator of 14 C.F.R. Part 135 air cargo flights.

[Dec. ¶ 2.] Ameriflight maintains its headquarters and corporate offices in Dallas, Texas, at Dallas-

Fort Worth International Airport. *Id.* Most of its key executives and several other anticipated

witnesses reside in the Dallas-Fort Worth area. *Id*. These include Mr. Macduff (Director of Human

Resources); Chris Adams (Chief Pilot); Sarah Hankla (Recruiter responsible for Plaintiff); Will

Folger (Chief Financial Officer); Rick Smith (Director of Training); and Sheri Larkin (Controller).

*Id.*

4.      On April 23, 2021, Plaintiff submitted an employment application to Ameriflight.

[Dec. ¶ 3 and Exh. 1.] On it, Plaintiff held herself out as a resident of Massachusetts. *Id.* She

indicated that she had been employed by Vieques AirLink in San Juan for about two months prior

to submitting the application, but listed no other connections to this District. *Id.* To the contrary,

Plaintiff listed prior employment in Michigan, Louisiana, and Maine just with in the previous three

years. *Id.*

5.      Ameriflight extended an offer of employment to Plaintiff by letter dated April 23,

2021, addressed to her residence in Mattapoisett, Massachusetts. [Dec. ¶ 3 and Exh. 2.] In the offer

letter, Ameriflight told Plaintiff that "following the successful completion of training you will be

a Captain in the BE99 domiciled in San Juan, Puerto Rico[.]" *Id.* Exh. 2. Ameriflight informed

Plaintiff that her employment would begin with a week of "Basic Indoctrination" training at Ameriflight's Dallas headquarters starting on May 10, 2021. *Id.* Plaintiff accepted the offer. *Id.*

6.      On May 10, 2021, *i.e.*, on Plaintiff's first day of training in Dallas, Plaintiff and Ameriflight entered into the Training and Employment Agreement (the "Agreement") that forms the basis of all of Plaintiff's claims and causes of action asserted herein. [Dec. ¶ 3 and Exh. 3.] In the Agreement, Plaintiff and Ameriflight recited their mutual understanding that "in order to fly the Beechcraft 99 as a Captain the Pilot" – *i.e.*, Plaintiff – "must undergo FAA Part 135 regulated Ameriflight training. Without such necessary training, the Pilot is unqualified to fly the Beechcraft 99 as a Captain. The Pilot is voluntarily entering the training program offered by Ameriflight in accordance with this agreement." *Id.* Exh. 3.

7.      Ameriflight agreed to provide Plaintiff several types of training, including "e-learning, ground/indoctrination class, flight training, Simulator sessions, FAR 135 check ride, and initial operating experience (IOE) flights with a qualified Captain. All training expenses will be paid initially by Ameriflight, subject to repayment by the Pilot under the terms and conditions of this agreement." *Id.* The parties agreed that the cost of training was $20,000, and Plaintiff promised to repay Ameriflight for all or part of the cost of training if she resigned or was terminated for cause before competing 18 months of "revenue flying" for Ameriflight. *Id.* The enforceability of this repayment provision is at the heart of the claims and allegations asserted by Plaintiff in the Complaint, but the merits of Plaintiff's claims – or lack thereof – are not germane to this Motion.

8.      Plaintiff's allegation at Paragraph 62 of the Complaint that "for ***the entirety of her employment*** with Ameriflight, from May 2021 until December 2021, including for much of her training, Fredericks was based out of San Juan, Puerto Rico," is demonstrably false. Rather, by Plaintiff's own admission, her "indoc" training began on May 10, 2021, lasted for one week, and

took place in Dallas. [Complaint (doc. 1) ¶ 63; Dec. ¶ 4.] Plaintiff alleges that she was then required

"to do two weeks of training *in Dallas*." [Complaint (doc. 1) ¶ 63.] It was actually three weeks,

and included a week of BE99 Systems Ground Training from May 17 through 21, 2021, followed

by two weeks of training on a stationary flight training device or "FTD" from May 24 through

June 4, 2021. [Dec. ¶ 4.] This lawsuit is about that training and Plaintiff's promise to pay for it

under certain circumstances, and that should be the Court's focus for the purposes of this Motion.

After completing training, however, Plaintiff worked for Ameriflight in San Juan for about six

months before resigning without notice.

9.      Plaintiff resigned her employment with Ameriflight on November 19, 2021. [Dec.

¶ 5 and Exh. 4.] Subsequent to her resignation, but prior to Ameriflight having made any demand

for payment, Plaintiff contacted Ameriflight and *requested* a "repayment plan" to allow her to pay

back the $20,000 cost of training over time. [Dec. ¶ 5 and Exh. 5.] Ameriflight accepted Plaintiff's

offer to pay over time. [*Id.*; Complaint (doc. 1) ¶ 69.] As she acknowledges, Plaintiff made about

$3,250.00 in payments between January 2022 and January 2023. [Complaint (doc. 1) ¶ 70.] As

discussed below, Plaintiff has continued to make payments during the pendency of the lawsuit.

10.      In the Complaint, Plaintiff states that she "was employed by Ameriflight from

approximately May to December 2021 and resided in Puerto Rico during this time." [Complaint

(doc. 1) ¶ 8.] That is, she is careful not to allege her state (or territory) of citizenship, or that she

*currently* resides in Puerto Rico, but rather only that she "resided" in Puerto Rico at the time the

events in question occurred. On her Civil Cover Sheet (doc. 1-1), Plaintiff did claim to be a citizen

of the Commonwealth of Puerto Rico for diversity of jurisdiction purposes, but in the same

document, Plaintiff *also* informed the Court that Ameriflight is incorporated or has its principal

place of business in Puerto Rico, which is objectively false and is belied by Plaintiff's (accurate)

allegation in the Complaint that Ameriflight has its principal place of business in Dallas. [Complaint (doc. 1) ¶ 7.]

11.     Ameriflight does not know with certainty where Plaintiff currently resides. However, she mailed her reimbursement checks for February and March 2022 from Massachusetts, as indicated by her email to Ameriflight on January 29, 2022, advising that she had dropped the checks in the mail, "but Massachusetts is having a big storm snowstorm these past two days, and I don't think the USPS picked it up yet." [Dec. ¶ 6 and Exh. 7.] All of Plaintiff's repayment checks have been drawn on an account at USAA in San Antonio, Texas, and indicate Plaintiff's address as being in Mattapoisett, Massachusetts. [Dec. ¶ 6 and Exh. 6.] These include checks written on January 28, 2023 (two days before she filed suit) and March 2 and April 1, 2023 (well *after* she filed suit). *Id.*

## ARGUMENT AND AUTHORITY

Based on the foregoing facts, the Court should grant the Motion for each of the following reasons:

### A.     Applicable law regarding discretionary transfers under Section 1404(a).

12.     Pursuant to 28 U.S.C. § 1404(a) a district court may transfer any civil action to any other district or division where it might have been brought "for the convenience of the parties and witnesses, in the interest of justice."[1] This section "is intended to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Astro-Med, Inc. v. Nihon Khoden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009). The purpose of Section 1404(a), which is a codification of the *forum non conveniens*

---

[1] Ameriflight concedes that the Court has personal jurisdiction over Plaintiff's individual claims asserted herein. For that reason, transfer under Section 1404(a), rather than dismissal under Rule 12(b)(3), is the appropriate remedy.

doctrine still applicable in some circumstances, is "to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

13.     The analysis "starts with the consideration of the statutory elements:  whether the transfer is for the convenience of parties and witnesses, and in the interest of justice." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000). Depending on the circumstances of the case, district courts may consider "a vast array of other factors that assist with this determination." *Padial-Perez v. American Airlines, Inc.*, 212 F. Supp. 3d 279, 281 (D.P.R. 2016). These include "the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction." *Id.* (citing *Coady*, 223 F.3d at 11). "Still others are drawn from the age-old *forum non conveniens* doctrine, and comprise the relative congestion between the transferor and transferee district; the local interest in having localized interests decided at home; the familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). Each of these elements is discussed in turn below.

**B.     Convenience of the Parties – Favors Transfer.**

14.     The first statutory factor to be considered is whether transfer to the Northern District of Texas would increase the convenience for Plaintiff and for Ameriflight. It is generally true that "where the effect of a transfer is to ***shift*** the conveniences from one party to another, transfer is not appropriate." *Arroyo-Perez v. Demir Group Int'l*, 733 F. Supp. 2d 314, 319-320

(D.P.R. 2010).[2] In many instances, the plaintiff resisting transfer is a resident of the forum in which they chose to file suit. As discussed above, that seems not to be the case here. Plaintiff appears to be a resident of Massachusetts, and has very purposefully *failed* to allege that she is a current resident of Puerto Rico.

15.     Despite her choice to file suit in this District, if Plaintiff indeed resides in Massachusetts (or any place other than Puerto Rico) proceeding through litigation and trial in Texas would not be meaningfully less convenient for Plaintiff than proceeding in this District. If anything, it would be *more* convenient for Plaintiff to travel from Massachusetts to Texas to litigate this case than it would be for her to travel from Massachusetts to this District. Although it was admittedly a non-scientific study, a Google Flights search for March 23, 2023, showed ten non-stop flights from Boston to DFW, versus three non-stop flights from Boston to San Juan. The flight time on each route is a little over four hours, and prices from Boston to DFW are lower.

16.     Proceeding through litigation and trial in Texas would be substantially *more* convenient for Ameriflight than proceeding in this District. As Plaintiff recognizes in the Complaint, Ameriflight maintains its principal place of business in Dallas, Texas. [Complaint (doc. 1) ¶¶ 2, 7.] As discussed above, most of Ameriflight's key executives reside and maintain their offices in the Dallas-Fort Worth area, including its Director of Human Resources (Scott Macduff), Chief Pilot (Chris Adams), Chief Financial Officer (Will Folger), Director of Training (Rick Smith), and Controller (Sheri Larkin), most or all of whom are also anticipated to be witnesses, as discussed in the following section. [Dec. ¶ 2.] Based on the foregoing, transfer from this District to the Northern District of Texas would result in a net gain of convenience for the Parties. Transfer

---

[2] All emphasis supplied unless otherwise indicated.

would *at most* be neutral for Plaintiff in terms of convenience, and it would greatly enhance the convenience of litigation for Ameriflight. This important factor weighs strongly in favor of transfer.

**C.      Convenience of the Witnesses – Strongly Favors Transfer.**

17.      "Of the factors considered by the court, the convenience of the expected witnesses is probably the most important factor, and the factor most frequently mentioned." *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (quoting *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991)). "When a party seeks transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover." *Arroyo-Perez*, 733 F. Supp. 2d at 320 (quoting *Blinzer v. Marriott Int'l, Inc.*, 857 F. Supp. 2d 1, 3 (D.R.I. 1994)). Ideally, the moving party will "show the nature, substance, or materiality of the testimony to be offered by the prospective witnesses[.]" *Ponce De Leon Hosp. Corp. v. Avalon Logistics, Inc.*, 117 F. Supp. 3d 124, 132 (D.P.R. 2015). Ameriflight does so below.

18.      Specifically, based on the allegations in the Complaint and its anticipated defenses, Ameriflight believes that the following witnesses have relevant knowledge and may be called upon to testify at trial:

| Name | Relationship/Knowledge | Residence[3] |
|---|---|---|
| Scott Macduff | Director of Human Resources for Ameriflight; involved in hiring Plaintiff and negotiating and setting up the repayment plan requested by Plaintiff; had a substantial amount of correspondence with Plaintiff regarding the Agreement and Plaintiff's reaffirmation of it | Texas |
| Chris Adams | Chief Pilot for Ameriflight; alleged in Complaint to have relevant knowledge; testimony will be material | Texas |

---

[3] For proof of residence, see the Declaration of Scott Macduff at Paragraph 2.

| | | |
|---|---|---|
| | to questions of intent and enforceability of the Agreement | |
| Sarah Hankla | Recruiter for Ameriflight; signed Agreement on behalf of Ameriflight | Texas |
| Will Folger | Chief Financial Officer for Ameriflight; knowledge of purpose and use of training repayment agreements; testimony will be material to questions of intent and enforceability | Texas |
| Rick Smith | Director of Training for Ameriflight; knowledge of the true cost of pilot training to Ameriflight and how it is calculated; testimony will be relevant to enforceability (and specifically to rebut Plaintiff's allegation that the stated training cost does not represent the true cost of training) | Texas |
| Sheri Larkin | Controller for Ameriflight; knowledge of the true cost of pilot training to Ameriflight and how it is calculated; testimony will be relevant to enforceability (and specifically to rebut Plaintiff's allegation that the stated training cost does not represent the true cost of training) | Texas |
| Pete Schiess | Director of Recruiting for Ameriflight; knowledge of the purpose and use of training repayment agreements; signed offer letter on behalf of Ameriflight | California |
| Paul Chase | Former President/CEO of Ameriflight; knowledge of the purpose and use of training repayment agreements | Florida |
| Kathleen Fredericks | Plaintiff | Massachusetts[4] |

19.     As the Court will see, almost every relevant witness is located in Texas. Those that are not in Texas are located *outside* of Puerto Rico and will be required to travel to testify at trial in either event. Most significantly, Ameriflight has not identified any relevant witnesses that it knows to be living *in* Puerto Rico. Plaintiff mentions Javier Vanchier, Ameriflight's Base Manager in San Juan, in the Complaint, but he had no involvement in the Agreement. She also mentions Alberto Calvo, who no longer works for Ameriflight but for a time served as the company's Caribbean Region Chief Pilot. Mr. Calvo interacted with Plaintiff during her employment, but (like Mr. Vanchier) had no involvement in the drafting, negotiation, or enforcement of the Agreement.

---

[4] On information and belief.

No witnesses, at least from Ameriflight's perspective, will be inconvenienced in any way by transfer of this action from this District to the Northern District of Texas. Transfer will enhance convenience for nearly every key witness, and will not increase the burden on *any* witness known to Ameriflight. This statutory factor weighs strongly in favor of transfer.

**C.      Docket Congestion – Strongly Favors Transfer.**

20.      Turning from the statutory factors (convenience of the witnesses and parties) to the *forum non conveniens* factors, the Court must consider whether "docket congestion" weighs for or against transfer. As one court in this District put it in 2014, "it is not unknown that the District of Puerto Rico has one of the most congested criminal and civil dockets in the nation." *Caribbean Restaurants, LLC v. Burger King Corp.*, 23 F. Supp. 3d 70, 79 (citing several cases describing the Court's docket as "heavily" and "extremely" congested). *See, e.g.*, *Prospero Tire Export, Inc. v. Maersk Line A/S*, Civil No. 18-1015(RAM), 2019 WL 4166356, at *6-7 (D.P.R. Aug. 30, 2019). This public factor weighs in favor of transfer.

**D.      Familiarity of the Forum with Governing Law – Strongly Favors Transfer.**

21.      Another of the *forum non conveniens* factors examined by courts in this District and elsewhere is the relative familiarity of the transferor and transferee courts with the law governing the dispute. Both this Court and the courts in the Northern District of Texas are thoroughly familiar with the FLSA. The same cannot be said for the Texas Covenants Not to Compete Act (the "Act"), codified at Tex. Bus. & Com. Code §§ 15.50 *et seq.* This seems an obvious point, but in the event it is not, a Westlaw "KeyCite" search for cases citing the Act reveals that no court in this District has *ever* cited the Act. Nor have any other district courts in the First Circuit or the First Circuit itself. By contrast, the same KeyCite search reveals 45 citations by courts in the Northern District in Texas, over 100 in other districts in Texas, and 19 by the Fifth

Circuit. *See, e.g.*, *Providence Title Co. v. Fleming*, No. 21-40578, 2023 WL 316138 (5th Cir. Jan. 19, 2023) (construing the Act and determining that the employment agreement in question was enforceable); *Clark v. Truist Bank*, No. 3:19-CV-00589-X, --- F. Supp. 3d ---, 2022 WL 296053 (N.D. Tex. Feb. 1, 2022) (granting summary judgment in favor of employer on its claim that the non-compete terms in an employment agreement were consistent with the Act and thus enforceable). None of this is said to suggest that this Court would not be *capable* of construing the Act, but the factor to be considered is familiarity, not aptitude, and that factor strongly favors transfer.

E.      **Interest in Having Local Issues Decided at Home – Strongly Favors Transfer.**

22.      This case involves few, if any, "local issues." While it is true that Plaintiff worked for Ameriflight in San Juan for a few months, at its heart, this is a dispute regarding the enforceability of the terms of the Agreement. The Agreement is governed by Texas law. [Dec. ¶ 3 and Exh. 3.] So are the agreements signed by the other trainee-pilots Plaintiff wants to represent. [Complaint (doc. 1) ¶ 51.] The fact that some of Plaintiff's post-training work for Ameriflight was performed in Puerto Rico is "secondary to the crux of this case." *Caribbean Restaurants*, 23 F. Supp. 3d at 79. The inclusion of the choice-of-law provision favoring Texas means that "for purposes of the interpretation" of the Agreement, "home" is in Texas. *Id. See, e.g.*, *GMMI, LLC v. Paragon Auctions, LLC*, No. 3:14-cv-01732 (JAF), 2015 WL 847189, at *3 (D.P.R. Feb. 26, 2015) (granting motion to transfer, and considering "the fact that the parties bargained for and agreed that New Jersey law applies to any dispute arising from their agreement" weighed in favor of transfer).

23.      The State of Texas has an undeniable interest in having issues regarding the interpretation, scope, and application of the Act decided in Texas, as well as issues regarding

whether the repayment terms of the Agreement are unenforceable "penalties" as defined in decades of Texas common law. By contrast, the Commonwealth of Puerto Rico has little to no discernable interest in those determinations. In addition, Plaintiff has demanded a trial by jury. [Complaint (doc. 1) at p. 23.] There is no reason why a Puerto Rico jury should be burdened with deciding questions of fact pertaining to a contract involving a Texas defendant and applying Texas law. *See, e.g.*, *Goya Foods Inc. v. Oy*, 959 F. Supp. 2d 206, 219 (D.P.R. 2013) (denying motion to transfer to Chicago a case involving trademark confusion said to have affected Spanish-speaking consumers in Puerto Rico, because movant "failed to explain why a Chicago jury should be burdened" with resolving those questions) (citing *McEvily v. Sunbeam-Oster Co., Inc.*, 878 F. Supp. 337, 348 (D.R.I. 1994) (granting transfer in part based on Florida's local interest in the suit and the fairness of having a Florida jury decide the case)); *Betancourt v. Wal Mart Stores, Inc.*, Civil No. 15-1536 (GAG), 2016 WL 80643, at *3 (D.P.R. Jan. 7, 2016) (granting transfer because "other than the fact that Plaintiff resides in Puerto Rico, there is no relation between the alleged events and Puerto Rico" and "it would clearly be a burden to impose jury duty upon the people of Puerto Rico when they have no relation to the litigation") This public interest factor weighs strongly in favor of transfer.

**G.     Availability of Documents – Neutral.**

24.     In days past, this factor might have favored transfer, inasmuch as Ameriflight's headquarters in Dallas is also its main document repository. The easy availability of electronic documents and records now renders this factor neutral in this and almost every other case. *Ponce De Leon Hosp. Corp.*, 117 F. Supp. 3d at 133 (due to technological advances, the weight of the availability of documents as a factor in determining convenience has been significantly reduced).

**H.**     **Possibility of Consolidation – Neutral or Not Applicable.**

25.     There are no other suits presently pending against Ameriflight arising out of its

former employees' contractual repayment obligations and/or alleging FLSA violations or unfair

restraint of trade. A handful of former employees filed such suits in Texas state court within the

last 24 months, but all of those cases have been resolved. This factor is neutral.

**I.**     **Order of Obtaining Jurisdiction – Neutral or Not Applicable.**

26.     Again, with no other suits presently pending against Ameriflight arising out of its

former employees' contractual repayment obligations and/or alleging FLSA violations, this factor

is neutral.

**J.**     **Avoidance of Conflicts of Laws – Neutral.**

27.     As presently pleaded, this case does not present conflicts of laws issues. There is

no dispute that the FLSA applies to Plaintiff's claims for minimum wage violations, and Plaintiff

agrees and concedes that Texas law applies to her remaining claims. Neither this Court nor any

transferee court will be required to resolve conflicts of laws. This factor is neutral.

**K.**     **Other Considerations.**

28.     Neither Party will be required to hire new counsel in the event of transfer. Plaintiff

is represented by Puerto Rico counsel as well as attorneys in Denver, Washington, D.C., Boston,

and Dallas, including Dallas-based Ashley Tremain, who represented a former Ameriflight pilot

in similar state court litigation in Texas last year.[5] Ameriflight is represented herein by Ogletree

Deakins, including counsel licensed in Puerto Rico as well as John M. Barcus of Ogletree Deakins'

Dallas office, who represented Ameriflight in the suit brought by Ms. Tremain's former client, as

_____

[5] *Preston Young and Trent Koenig v. Ameriflight LLC*, Cause No. 017-331266-22, in the 17th Judicial District Court, Tarrant County, Texas. That lawsuit has settled.

well as in two other lawsuits brought by/and or against other former Ameriflight pilots in the Dallas-Fort Worth area.

**L.      Summary.**

29.      As demonstrated above, the two most important factors in the First Circuit's transfer-of-venue rubric – the statutory factors of convenience of the parties and the convenience of the witnesses – strongly favor transfer from this District to the Northern District of Texas. Several of the public interest factors, including the forum's familiarity with the law, the local interest (or not) in having local issues decided at home, and considerations of docket congestion, all strongly favor transfer. Notably, not *one* of the many factors this Court is required to consider weighs ***against*** transfer. Overall, "the balance of factors strongly favors the transferee forum[.]" *Ponce De Leon Hospitality Corp.*, 117 F. Supp. 3d at 131 (collecting cases on point). In such circumstances, transfer is warranted and appropriate.

## RELIEF REQUESTED

Subject to and without waiving its Motion to Dismiss, Ameriflight respectfully requests that the Court grant this Motion; transfer this action to the courts of the Northern District of Texas, Dallas Division; and grant all other relief, general or special, at law or in equity, to which Ameriflight may be justly entitled.

In Atlanta, Georgia, for San Juan, Puerto Rico, this 24th day of April 2023.

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel(s) of record.

-15-

Respectfully submitted,

**Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.**

Attorneys for Ameriflight, LLC
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 4800
Atlanta, GA 30303
Telephone: (404) 260-0657
Fax: (404) 870-1732

*s/Carlos Colon-Machargo*
CARLOS G. COLÓN-MACHARGO
U.S.D.C.-P.R. No. 216809
carlos.colon-machargo@ogletree.com

JOHN M. BARCUS
*Pro Hac Vice Motion Forthcoming*
john.barcus@ogletree.com
SHAINA E. HICKS
*Pro Hac Vice Motion Forthcoming*
shaina.hicks@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
8117 Preston Road, Suite 500
Dallas, Texas 75225
Telephone:  (214) 987-3800
Fax:  (214) 987-3927

**ATTORNEYS FOR DEFENDANT AMERIFLIGHT, LLC**