IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| KATHLEEN FREDERICKS<br><br>individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>AMERIFLIGHT, LLC,<br><br>       Defendant. | Case No. 3:23-cv-01042 (PAD) |

**<u>OPPOSITION TO AMERIFLIGHT'S MOTION TO TRANSFER VENUE</u>**

I.  **Introduction**

The proposition that an international airline with not one, but two, air bases in Puerto Rico would find it "inconvenient" to litigate in Puerto Rico strains credulity. Ameriflight recruited and employed the named plaintiff in this putative FLSA collective action, Kathleen Fredericks, while she resided in Puerto Rico. Ameriflight flies its "Flight, Operations, & Recruiting teams" to Puerto Rico for hiring events, offers $5,000 bonuses to pilots who relocate from the mainland to Puerto Rico, and employs a Caribbean Regional Chief Pilot to serve as a "liaison between our Chief Pilot's Office and our pilots domiciled and working on the island of Puerto Rico." Ameriflight cannot be, nor does it claim to be, surprised that Fredericks would, therefore, choose Puerto Rico as the venue to bring her claims.

Ameriflight's argument that the Northern District of Texas would be more convenient for both Plaintiff and Ameriflight is self-serving and factually inaccurate. Ameriflight bears a heavy burden in choosing to challenge Plaintiff's "venue privilege" and it has failed to do so.

II.  **Statement of Material Facts**

1.  Kathleen Fredericks, the named plaintiff in this matter, seeks to represent an FLSA collective consisting of all pilots employed by Ameriflight who (1) are or were subject to a training repayment agreement provision (referred to herein as a "TRAP") which requires pilots to pay Ameriflight between $20,000 and $30,000 if they leave prior to the end of their contract term of 18 to 24 months, and (2) file a consent form to join this action. Compl. ¶¶ 2, 83.

2.  Ameriflight is a national cargo airline with at least 14 bases throughout the United States and Puerto Rico, including: Borinquen, Puerto Rico; Burbank, California; Cincinnati, Ohio; Dallas, Texas; El Paso, Texas; Lansing, Michigan; Manchester, New Hampshire; Omaha, Nebraska; Phoenix, Arizona; Portland, Oregon; Ontario, California; San Antonio, Texas; San Juan, Puerto Rico; and Spokane, Washington. Compl. ¶ 16.

1

3. Ameriflight attempted to re-establish operations in Miami, Florida in April 2020. *Growth Opportunity Expands Cargo Operations into Miami, FL,* Apr. 30, 2020, attached as Ex. 1 ("'Multiple departments made trips to MIA to coordinate with customers, mechanics, and more. Pat Kremer, Vice President of Tech Ops, and I drove six hours round trip to Key West to strategize with contract maintenance and the FBO. We wanted to make sure everything was done right,' said Robert [Barrett, Director of Charter Sales].").

4. Ameriflight is a Nevada limited liability company. Def.'s Loc. Rule 7.1 Disclosure Statement, ECF No. 24.

5. Ameriflight's parent company is Pebbles Aviation, a Florida company. *Id.*

6. Ameriflight's Owner and Chairman is James Martell, who resides in Sarasota, Florida, and also serves as the managing member of Pebbles Aviation. *Experience: The Ameriflight Difference*, attached as Ex. 2; Electronic Articles of Organization, attached as Ex. 3.

7. The former CEO of Ameriflight, Paul Chase, listed as a potential witness by Ameriflight, resides in Florida. Def.'s Mot. to Transfer Venue, ECF No. 23 at 9.

8. As part of its recruiting efforts, Ameriflight sent pilots to the 2020 Women in Aviation Conference, held in Orlando, Florida. Ameriflight Facebook Posts, attached as Ex. 4, at 7.

9. Ameriflight conducts recruiting trips to Puerto Rico. Ex. 4 at 1 ("Our Flight, Operations, & Recruiting teams will be heading out to Puerto Rico in 2 weeks to talk careers! Come on by if you'd like to join the nation's largest 135 airline!") and at 3 ("Having fun in Puerto Rico recruiting pilots").

10. Ameriflight has at times offered $5,000 recruiting bonuses for pilots relocating from the mainland to Puerto Rico. *Id.* at 5.

11. Captain Alberto Calvo is employed by Ameriflight as the Caribbean Regional Chief Pilot, to serve as a "liaison between our Chief Pilot's Office and our pilots domiciled and working on the island of Puerto Rico." *Id.* at 8.

12. Fredericks resided in Puerto Rico when she was recruited by Ameriflight and during the entirety of her employment with Ameriflight, from May 2021 until December 2021. Compl. ¶ 62; MacDuff Decl., ECF No. 23-1, Ex. 1 at 8 (Fredericks employed by Vieques Airlink in Puerto Rico when "Ameriflight called me") and at 9 (Fredericks "moved to PR" for the position with Vieques Airlink); *Id.*, Ex. 4 at 21 (Fredericks requested a discount on her $20,000 debt for expenses not incurred by Ameriflight because "I was already a resident of Puerto Rico").

13. Fredericks completed Ameriflight's training period by spending two weeks flying with a training captain on revenue-generating flights in Puerto Rico. Compl. ¶ 64.

14. When Fredericks resigned, due to factors that included a grueling schedule and a non-competitive salary as compared to other airlines, she included Javier Vanchier, the San Juan Airport Base Manager, and Alberto Calvo on the email. Compl. ¶ 67.

15. The TRAP does not contain a forum or venue selection clause. Compl. ¶ 51.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to this claim arose from transactions conducted in this territory. Compl. ¶ 15; Def.'s Motion to Transfer Venue, ECF No. 23 at 5, n.1 ("Ameriflight concedes that the Court has personal jurisdiction over Plaintiff's individual claims asserted herein. For that reason, transfer under Section 1404(a), rather than dismissal under Rule 12(b)(3), is the appropriate remedy.").

17. Opt-in Plaintiff David Parks is a resident of Grand Rapids, Michigan. Letter from Scott MacDuff to David Parks (Aug. 5, 2021), attached as Ex. 5.

### III. Standard of Law

Ameriflight concedes that the District of Puerto Rico is a proper venue for the claims asserted in the Complaint, which is why it does not seek dismissal based on improper venue under Rule 12(b)(3). *See* ECF No. 23 at 5, n.1. Indeed, Ameriflight **cannot** argue that this Court is an improper venue, because it has chosen to locate two out of its 14 air bases in Puerto Rico – one in San Juan and one in Borinquen – and it is undeniable that the named plaintiff, Kathleen Fredericks, was recruited by Ameriflight while residing in Puerto Rico and that she continued to reside there throughout her employment with Ameriflight. Fact Stmt. ¶¶ 2, 12, 13, 16.

Rather, Ameriflight relies on 28 U.S.C. § 1404(a) to request that this Court exercise its discretion to transfer venue to the Northern District of Texas. The reason? Ameriflight has a preference–at least in this case–for litigating in the judicial district of its corporate offices instead of in Puerto Rico. Apparently, Ameriflight does not **always** prefer to litigate in the Northern District of Texas, a reasonable inference to be drawn from the notable absence of a forum or venue-selection provision in the TRAP at issue. Fact Stmt. ¶ 15.

Ameriflight, as a defendant seeking transfer, bears a heavy burden under Section 1404(a), "because of the strong presumption in favor of plaintiff's choice of venue." *Arroyo-Perez v. Demir Grp. Int'l*, 733 F. Supp. 2d 314, 319 (D.P.R. 2010). "The plaintiff's choice of forum is generally not disturbed." *Id.* at 318 (noting that "[a] motion to transfer may be denied because the plaintiff's choice of forum is given significant weight."). This is especially true here, because "a plaintiff's choice of forum in an FLSA case is entitled to deference." *Montoya v. CRST Expedited, Inc.*, 285 F. Supp. 3d 493, 500 (D. Mass. 2018).

Perhaps in recognition of this heavy burden, Ameriflight has cited to numerous facts outside the complaint, including the following: Fredericks' online employment application employment, the offer letter from Ameriflight to Fredericks, the TRAP signed by Fredericks,

4

Fredericks' resignation notice, email exchanges between Fredericks and Ameriflight employees, and checks signed by Fredericks. The ostensible reason for this flurry of evidence is to minimize the connection between Fredericks' claims and Puerto Rico (*e.g.*, according to Ameriflight, "This case involves few, if any, 'local issues'," ECF No. 23 at 11) and to establish that Fredericks does not currently reside in Puerto Rico. Because Ameriflight's submissions are self-serving and incomplete, Plaintiff has likewise submitted evidence in support of her choice of venue.

If this Court considers facts outside the pleadings, it should apply the summary judgment standard. *Cf. Generadora de Electricidad del Caribe v. Foster Wheeler Corp.*, 30 F. Supp. 2d 196, 198 (D.P.R. 1998) ("Because the court here considers these supplementary materials, the summary judgement standard is both apposite and opportune."), *citing Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 19 (1st Cir.1992) (test for determining whether motion to dismiss should be treated as motion for summary judgment is a "functional" one). Under this standard, the Court must "examin[e] the facts in the light most favorable to the nonmoving party and draw[] all reasonable inferences in his favor." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 661 (1st Cir. 2000). Here, Plaintiff, as the nonmoving party, is entitled to have all reasonable inferences drawn in her favor.

IV.   **Argument**

  A.   **The Plaintiff's choice of forum in an FLSA case is entitled to deference.**

Ameriflight sidesteps the fact that this lawsuit has been brought as a nation-wide collective action under the FLSA. As other courts in the First Circuit have noted, "considerable deference" is "owed to the plaintiffs' choice of forum in an FLSA collective action." *Montoya v. CRST Expedited, Inc.*, 285 F. Supp. 3d 493, 500 (D. Mass. 2018), *citing Astro–Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 13 (1st Cir. 2009); *Johnson v. VCG Holding Corp.*, 767 F. Supp. 2d 208, 215 (D. Me. 2011) (collecting cases). This is so for at least three reasons.

5

First, as with the civil rights laws, the federal courts have a strong public policy interest in private enforcement of the FLSA. "Congress' principal purpose in enacting the FLSA was to protect workers from substandard wages, oppressive working hours, and labor conditions that are detrimental to maintenance of minimal standards of living necessary for the health, efficiency, and well-being of workers." *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 178–79 (D. Mass. 2006) (Lasker, J.). "By encouraging private civil actions on behalf of groups of affected employees, class actions under the FLSA therefore serve the public interest. Allowing private attorneys to prosecute such actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims." *Id.* at 179; *see also Skirchak v. Dynamics Rsch. Corp.*, 508 F.3d 49, 58 (1st Cir. 2007) (FLSA collective actions "permit citizens to function as private attorneys general"). Because the federal courts should encourage private enforcement of the FLSA, deference is owed here to the Plaintiff's choice of forum.

Second, an FLSA collective action requires individuals to affirmatively "opt in" to the action, thereby allowing eligible members of the collective to determine for themselves whether the forum is convenient; "courts have noted that [this] 'opt-in' structure of collective actions under § 216(b) of the FLSA strongly suggests that Congress intended to give plaintiffs considerable control over the bringing of a FLSA action." *Pauli v. Ollie's Bargain Outlet, Inc.*, No. 522CV00279MADML, 2022 WL 14760084, at *3 (N.D.N.Y. Oct. 25, 2022), *quoting Koslofsky v. Santaturs. Inc.*, No. 10-cv-9160, 2011 WL 10894856, *2 (S.D.N.Y. Aug. 18, 2011).

Third, in employment cases, "courts have concluded that operative facts may be found ***at the locations where employees worked***, notwithstanding allegations that a uniform corporate policy caused the FLSA violations." *Pauli*, 2022 WL 14760084, *3 (emphasis added), *quoting*

6

*Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 579 (S.D.N.Y. 2015). "[T]he locus of operative facts [in an employment dispute] is the location of the alleged violations . . . **not the corporate headquarters**." *Pauli*, 2022 WL 14760084, *3 (emphasis added), *quoting Bukhari v. Deloitte & Touche LLP*, No. 12 civ. 4290, 2012 WL 5904815, *5 (S.D.N.Y. Nov. 26, 2012).

The putative members of *this* collective reside in far-flung corners of the United States and Puerto Rico, including but not limited to the areas surrounding Ameriflight bases located in Borinquen, Puerto Rico; Burbank, California; Cincinnati, Ohio; Dallas, Texas; El Paso, Texas; Lansing, Michigan; Manchester, New Hampshire; Omaha, Nebraska; Phoenix, Arizona; Portland, Oregon; Ontario, California; San Antonio, Texas; San Juan, Puerto Rico; and Spokane, Washington. Fact Stmt. ¶ 2. There is simply no basis for Ameriflight to focus exclusively on the current residence of Fredericks in assessing convenience, or to ignore the convenience of Puerto Rico to the many Ameriflight pilots who live and work there. Moreover, an early opt-in plaintiff to this lawsuit, David Parks, is a resident of Michigan, a strong indication that potential plaintiffs who live on the mainland will find Puerto Rico to be a convenient forum.

**B.   Under Section 1404(a), this case should remain in the District of Puerto Rico.**

Ameriflight requests that this Court utilize its discretion under 28 U.S.C. § 1404(a) to transfer this case to Texas. "Compared to the other federal venue provisions, the analysis under § 1404(a) presumes that the plaintiff's choice is proper. As a result, a movant under § 1404(a) bears the burden of showing that a transfer is not only appropriate, but *preferable* under the circumstances." *Padial-Perez v. Am. Airlines, Inc.*, 212 F. Supp. 3d 279, 281 (D.P.R. 2016) (emphasis added). "Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the 'plaintiff's venue privilege.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013).

7

In the absence of a valid and enforceable forum-selection clause, "[t]he § 1404(a) analysis starts with the consideration of the statutory elements: whether the transfer is '[f]or the convenience of parties and witnesses, [and] in the interest of justice.'" *Padial-Perez*, 212 F. Supp. 3d at 281, *quoting Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000). These factors weigh heavily in favor of keeping this case in Puerto Rico.

### 1. The contract does not contain a forum selection clause

If litigation of disputes concerning the TRAP were significantly more convenient for Ameriflight in Dallas than in any of the many forums where its pilots live and work, Ameriflight presumably could have included a forum-selection clause in the TRAP. After all, it specifically included a choice-of-law provision in the contract. It chose not to do so. A reasonable inference from this fact is that Ameriflight does **not** have a strong preference for its home forum in cases involving the TRAP. *Cf. Tuqui Tuqui Dominicana, S.R.L. v. Castillo*, No. 19 CIV. 108 (NRB), 2020 WL 1689763, at *3 (S.D.N.Y. Apr. 7, 2020) ("Moreover, given that the Agreement does not contain a forum selection clause . . . defendants' argument suggesting that this action should not have been brought in this Court is without merit."); *Stewart Org., Inc. v. Ricoh Corp.*, 696 F. Supp. 583, 590 (N.D. Ala. 1988) ("If the forum-selection clause was as important to the arrangement as Ricoh now says it was, why was it left out of the third document?").

### 2. Convenience of parties

Ameriflight's "admittedly [] non-scientific study" of the availability of direct flights from Boston to Dallas versus Boston to San Juan, *see* ECF No. 23 at 7, is a red herring. A court's inquiry into the convenience of parties does **not** focus on the number of miles that the party must travel or the duration and availability of flights. Rather, "the balance of convenience focuses on the comparative financial abilities of the parties[,] and the cost of litigation should be borne by the party in the best position to absorb and spread it." *Arroyo-Perez v. Demir Grp. Int'l*, 733 F.

8

Supp. 2d 314, 320 (D.P.R. 2010), *quoting Sigros v. Walt Disney World Co.,* 129 F.Supp.2d 56, 71 (D. Mass. 2001). Here, as in *Padial-Perez*, "[i]t is obvious that Defendant would be able to sustain, pound for pound, a much greater inconvenience than Plaintiffs in this regard. As Plaintiffs' counsel shrewdly observes, Defendant's claim of inconvenience rings quite hollow given that they are an industry leader in air travel. This factor, arguably the most important one in this analysis, thus lies in Plaintiffs' favor." *Padial-Perez*, 212 F. Supp. 3d at 282.

The allegedly greater convenience to Ameriflight of litigating in the Northern District of Texas rather than in Puerto Rico is entirely based on the fact that Ameriflight maintains its corporate offices in Dallas and "most of Ameriflight's key executives reside and maintain their offices in the Dallas-Fort Worth area." ECF No. 23 at 7. And yet, the inconvenience of litigating in San Juan instead of Dallas should be trifling for a major corporation that specializes in air transportation, whose executives and employees undoubtedly fly on a routine basis to and from Puerto Rico, where two of its air bases are located, not to mention the many other air bases it operates throughout the mainland. *See* Fact Stmt. ¶¶ 3, 8, 9. Indeed, travel from and to Dallas does not appear to have been an impediment for the current owner and chair of Ameriflight's board, who resides in Florida, or Ameriflight's parent company, Pebbles Aviation, which is also located in Florida, or Ameriflight's previous CEO, who resides in Florida. *Id.* ¶¶ 5-7. In fact, applying Ameriflight's logic, ECF No. 23 at 7, the nonstop flight from Miami to San Juan is approximately 2 hours and 36-41 minutes in duration, whereas the nonstop flight from Miami to Dallas is approximately 3 hours and 10-21 minutes in duration, making Puerto Rico the more proximate forum for some Florida witnesses. *See* Ex. 6.

Ameriflight would also have this court believe that the Northern District of Texas would be a more convenient forum for Kathleen Fredericks, or "*at most* be neutral for Plaintiff in terms

9

of convenience," ECF No. 23 at 8 (emphasis in original). This is false. Plaintiff chose Puerto Rico as a forum for a reason; requiring her to transfer venue would be highly disruptive.

As a threshold matter, the convenience to the plaintiffs in an FLSA collective action cannot be measured solely by the geographic distance between the named plaintiff's current residence and the alternate forum. Rather, the court must consider the convenience to the opt-in plaintiffs. *Johnson*, 767 F. Supp. 2d at 216; *see also Johnson v. Big Lots Stores, Inc.*, No. CIV.A. 04-3201, 2005 WL 357200, at *4 (E.D. La. Feb. 10, 2005). If this Court were to pursue Ameriflight's logic, it would need to take into account the residences of all members of the proposed collective, the likelihood of their changing residences during the litigation, their proximity to major airports, the relative cost of hotels and ground transportation in the two fora, and the likelihood that the case will proceed to trial (thereby requiring the plaintiffs to travel in the first place). This is an impossible assessment for a court to make.

Rather, this Court should evaluate the costs associated with forcing Plaintiff to change venues, having originally chosen Puerto Rico. Plaintiff's counsel developed a case strategy based on the venue lying in Puerto Rico, specifically retained local counsel in Puerto Rico for purposes of filing in Puerto Rico, and expended no less than $1,200 in *pro hac vice* fees to-date. The loss of these investments would be a significant inconvenience to Plaintiff. Even more importantly, requiring her to litigate in a forum that is not of her choosing would impede her ability to act as a "private attorney[] general." *Skirchak*, 508 F.3d at 58.

This factor weighs heavily against transfer.

        **3.    Convenience of witnesses**

Of the factors considered by the courts, the convenience of the witnesses is "probably the most important factor, and the factor most frequently mentioned." *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (Saylor, J.) (internal quotation marks omitted).

Here, however, the witnesses will be the parties themselves. All but one of the eight employees that Ameriflight may call as witnesses at trial are currently employed by Ameriflight. *See* ECF No. 23 at 7. The only former employee resides not in Texas but in Florida, which is not appreciably closer to Texas than it is to Puerto Rico. ECF No. 23-1 ¶ 2.

Ameriflight should have no difficulty compelling its own employees' presence at trial, regardless of forum. "[T]he persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, [therefore] that factor diminishes in importance." *Id.* at 276; *see also Arroyo-Perez v. Demir Grp. Int'l*, 733 F. Supp. 2d 314, 320 (D.P.R. 2010) ("[T]he convenience of witnesses who are employees of a party is given less weight by the court because that party can obtain their presence at trial."), *quoting* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3851.

Given that discovery has not yet begun, Plaintiff has yet to identify all relevant witnesses. As of today, she anticipates that any eventual opt-in plaintiff may be called as a witness. Although their residences are currently unknown to Plaintiff, it can be presumed that at least some of them reside in Puerto Rico and that the vast majority of them ***do not reside in Dallas***. In addition, she anticipates possibly calling as witnesses the following Ameriflight employees who do not reside in Dallas (on information and belief), giving lie to Ameriflight's argument that only one of its current employees would need to travel if this case were transferred to Dallas. This factor as well weighs against transfer.

| Name | Relationship/Knowledge | Residence |
|---|---|---|
| Javier Vanchier | San Juan Airport Base Manager; involved with pilot scheduling; familiar with Ameriflight's recruiting needs | San Juan, Puerto Rico |
| Alberto Calvo | Caribbean Regional Chief Pilot; has knowledge of all aspects of Ameriflight's training program; familiar with Ameriflight's recruiting needs; supervised pilots | San Juan, Puerto Rico |

11

| Axel Quinones | Training Captain; accompanied Fredericks on revenue flights during her training period | San Juan, Puerto Rico |
| --- | --- | --- |
| Anelia Rivera | Flight Dispatcher; involved with pilot scheduling; familiar with Ameriflight's recruiting needs | San Juan, Puerto Rico |
| David Noble | Former Check Airman; familiar with content of Ameriflight's training program | Salt Lake City, Utah |
| Bryce Anderson | Pilot; involved with pilot scheduling at Lansing airport base; familiar with Ameriflight's recruiting needs | Grand Rapids, Michigan |
| Tayvon Snowden | Training Captain; familiar with content of Ameriflight's training program | Atlanta, Georgia |
| Leif Holmstrand | Check Airman; familiar with content of Ameriflight's training program | Chicago, Illinois |
| Shirley Church | Recruitment Manager; familiar with Ameriflight's recruitment needs and strategies | Indianapolis, Indiana |

### 4.     Other *forum non conveniens* factors

This Court "may—when relevant—consider a vast array of other factors that assist with this determination [whether to transfer venue]. "Some of these, as the First Circuit has indicated, include: 'the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction.'" *Padial-Perez*, 212 F. Supp. 3d at 281, *quoting Coady*, 223 F.3d at 11. Ameriflight has acknowledged that all of these factors are neutral or not applicable, i.e., they do not weigh in favor of transfer. *See* ECF No. 23 at 13.

In addition, courts sometimes evaluate additional factors—again, when relevant—under the *forum non conveniens* doctrine: "the relative congestion between the transferor and transferee district; the local interest in having localized interests decided at home; the familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Padial-Perez*, 212 F. Supp. 3d at 281.

*Availability of Documents*

The availability of documents is simply not relevant to this case. "Because documents now are easily scanned, stored, and electronically transmitted, moving them no longer creates the

12

onerous burden it may once have imposed." *Koslofsky*, 2011 WL 10894856, at *4; *see also Johnson*, 767 F. Supp. at 217. This Court has, in the past, "decline[d] to give this factor any weight." *Padial-Perez*, 212 F. Supp. 3d at 282 ("With the advent of email and electronic filing, the physical location of a particular document is largely irrelevant. Also, it is not clear why the fact that a document was created in New York bears any relevance to this analysis.").

*Possibility of Consolidation and Order in Which the District Court Obtained Jurisdiction*

Ameriflight does not cite, nor is Plaintiff aware of, any cases that could be consolidated with this case, making these factors inapplicable.

*Relative Congestion Between the Transferor and Transferee District*

Ameriflight cites a 2014 case for the proposition that Puerto Rico "has one of the most congested criminal and civil dockets in the nation." ECF No. 23 at 10, *quoting Caribbean Restaurants, LLC v. Burger King Corp.*, 23 F. Supp. 3d 70, 79 (D.P.R. 2014). *Carribean Restaurants* in turn cites a 2013 case, *Miranda–Lopez v. Figueroa–Sancha*, 943 F.Supp.2d 276, 279 (D.P.R.2013), in support of this statement. Whether Puerto Rico's docket retains its congested status in 2023—10 years later—or relative to the docket of the Northern District of Texas, is completely unknowable from Ameriflight's briefing. Actual current data shows the opposite of what Ameriflight argues: According to reports generated by the U.S. Courts, the Northern District of Texas is more congested than the District of Puerto Rico by nearly every metric. Texas averages 605 annual filings per judgeship, whereas Puerto Rico averages 299 filings per judgeship. And the median time from filing to disposition for a civil case filed in the District of Puerto Rico is approximately half of what it is for a civil case filed in the Northern District of Texas (17.1 months versus 30.2 months).[1]

---

[1] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf

*Local Interest in Having Localized Interests Decided at Home*

Ameriflight asserts that "the Commonwealth of Puerto Rico has little to no discernable interest" in deciding whether Ameriflight's TRAP is enforceable and that "[t]here is no reason why a Puerto Rico jury should be burdened with deciding questions of fact pertaining to a contract involving a Texas defendant and applying Texas law." ECF No. 23 at 11-12. Putting aside Ameriflight's faux concern for burdening a Puerto Rico jury, there is **no reason** why a Puerto Rico court and a Puerto Rican jury **would not** be concerned with the enforceability of an extreme and radically anti-competitive contract used by an out-of-state defendant in the course of recruiting and employing Puerto Rican pilots to work on its Puerto Rican air bases. Ameriflight's choice to impose Texas law on pilots residing outside of Texas, including on Puerto Rican pilots working in Puerto Rico, if anything, strengthens Puerto Rico's interest in the case: To the extent that Ameriflight has chosen Texas law because it perceives it to be favorable to Ameriflight's interests, Puerto Rico has an interest in ensuring that Texas law is applied fairly to its residents. Indeed, a Puerto Rican jury is far more likely to view the facts of this case with the eyes of a jury drawn from any of the judicial districts where Ameriflight recruits and employs pilots, as opposed to a jury in the judicial district where Ameriflight maintains its corporate headquarters. The interests of justice would not be met by transferring this case to Texas.

*Familiarity of the Forum with the Law that Will Govern the Case*

This case was filed in federal court because the federal judiciary has subject matter jurisdiction over the federal FLSA claims in the case. Compl. ¶ 14. The FLSA and its unique procedures for notifying and joining potential opt-in plaintiffs in collective action will govern this case and its trajectory. As Ameriflight acknowledges, any federal district court is

14

"thoroughly familiar with the FLSA." ECF No. 23 at 10. Thus, the familiarity of the forum with the law that will govern the case does not weigh in favor of transfer.

This Court has supplemental jurisdiction over the state law claims in the case under 28 U.S.C. § 1367 because the state claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Ameriflight does not contest this Court's exercise of supplemental jurisdiction. Indeed, it requests that the case be transferred *from one federal court to another*. It does not argue that there are any particularly novel or complex issues of Texas law that must be decided, nor does it argue that the Texas claims "substantially predominate[]" over the FLSA claims. *See* 28 U.S.C. § 1367(c) (listing reasons a court may decline to exercise supplemental jurisdiction). As the First Circuit has noted, "'federal district courts are in the regular practice of applying laws of other' fora." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 70–71 (1st Cir. 2014) (citation omitted) ("We see no injustice in having a Massachusetts court interpret the contract [under Saskatchewan law]").

Because Texas law will not "govern" this case, nor are there novel or complex issues of Texas law presented by Plaintiff's claims, this factor does not weigh in favor of transfer.

*Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Ameriflight admits that this factor does not weigh in favor of transfer.

**V.     Conclusion**

Venue in Puerto Rico is proper, this forum was chosen by Plaintiff, and Ameriflight has failed to meet its heavy burden of proof on its motion to transfer. Plaintiff respectfully requests that this Court deny Ameriflight's motion in its entirety.

Respectfully submitted,

*/s/ Rachel Smit*

Rachel Smit (admitted *pro hac vice*)
rachel@fairworklaw.com
FAIR WORK, P.C.
192 South St. Suite 450
Boston, MA 02111, USA
Tel: (617) 841-8188

*/s/ Myriam E. Matos-Bermúdez*

Myriam E. Matos-Bermúdez
mmatos@dtslaw.com
DTS LAW LLC
221 Ave Ponce de León Ste 801
San Juan, PR 00917-1804
Tel: (787) 754-8700

David Seligman (admitted *pro hac vice*)
david@towardsjustice.org
Rachel W. Dempsey (admitted *pro hac vice*)
rachel@towardsjustice.org
TOWARDS JUSTICE
PO Box 371680, PMB 44465
Denver, CO 80237-5680
Tel: (720) 441-2236

Persis Yu (admitted *pro hac vice*)
persis@protectborrowers.org
STUDENT BORROWER PROTECTION CENTER
(a fiscally sponsored project of Shared Ascent Fund)
1025 Connecticut Ave NW, #717
Washington, DC 20036
Tel: (202) 670-3871

Ashley Tremain (admitted *pro hac vice*)
ashley@tremainartaza.com
TREMAIN ARTAZA PLLC
4925 Greenville Ave Ste. 200
Dallas, TX 75206
Tel: (469) 573-0229

*Attorneys for Plaintiff and the Putative Class and Collective*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel(s) of record.

Date: May 26, 2023

*/s/ Rachel Smit*
Rachel Smit